RAFAEL DÍAZ FONTÁNEZ ET AL., demandantes y recurrentes, *v.* LA SUCESIÓN DE SERAFÍN DÍAZ ET AL., demandados y recurridos.

*Número:* 316    *Resuelto:* 18 de diciembre de 1962

*Samuel R. Quiñones* y *Pablo Andino Espejo,* abogados de los recurrentes; *Angel Rivera Colón,* abogado de los recurridos.

Sala integrada por el Juez Asociado Señor Belaval como Presidente de Sala y los Jueces Asociados Señores Hernández Matos y Santana Becerra.

EL JUEZ ASOCIADO SEÑOR BELAVAL emitió la opinión del Tribunal.

Las siguientes, fueron conclusiones de hechos probados de la ilustrada Sala sentenciadora: "2—Que siendo casado Serafín Díaz procreó en relaciones que tuvo con Francisca Fontánez a los demandantes, nacidos todos antes de empezar a regir la Ley Núm. 229 de 12 de mayo de 1942, según enmendada, y así aparece de los certificados de nacimiento de todos y cada uno de los demandantes. [P] 3—Que Serafín Díaz nunca negó que los demandantes fueran sus hijos y por el contrario los consideraba como tales y los atendía, proporcionándoles todo lo necesario para su subsistencia. |P] 4—Que desde antes del año 1943, el administrador de los bienes de Serafín Díaz lo era su hijo político o yerno, Jacinto Cubano, cargo que desempeñó hasta su muerte en el

año 1952 y éste era el que proporcionaba toda la información al contable para la preparación de las planillas de contribución sobre ingresos. [P] 5—Que las planillas de ingresos de los años 1943, 1944, 1945, 1947, 1948 y 1949 del finado Serafín Díaz, fueron todas preparadas por el contable Joaquín Torres Noriega, a requerimiento del administrador Jacinto Cubano y éste era quien le proporcionaba y daba toda información de ingresos, deducciones generales y demás datos. Una vez preparadas las planillas *Serafín Díaz era quien las leía, firmaba y juraba ante el Colector de Rentas Internas.* [P] 6—Que en las planillas de ingresos de los años antes mencionados del finado Serafín Díaz y en la parte correspondiente al detalle de las deducciones generales en el encasillado que dice: 'Diga las personas que dependen y reciben el sustento exclusivamente del contribuyente, etc. . . .' *se figuran a los demandantes como hijos* para acogerse al crédito de $400.00 por cada uno, como exención o deducción a los fines de computar la contribución".

La ilustrada Sala sentenciadora, al denegar la declaración judicial solicitada sobre el reconocimiento voluntario, llegó a la conclusión que: "Al designar Serafín Díaz a sus hijos, aquí demandantes como dependientes, fue con el único fin y propósito de acogerse al derecho de exención, pero no fue su intención o propósito el reconocerlos como hijos naturales a todos los efectos legales. [P] Para que pueda prosperar una acción bajo el imperio de la Ley Núm. 243 de 1945, es necesaria la acción voluntaria, o sea el otorgamiento por el padre de un acta de nacimiento, escritura o documento público y que en el escrito o documento público se reconozca expresamente al hijo, haciéndose de una manera solemne y clara por el padre con la firme voluntad de realizarlo . . . Es cierto que de acuerdo con la ley una planilla de ingresos es un documento público, pero no es el documento en sí, sino su contenido lo que debe tenerse en consideración a los fines de determinar [sic] si en sí mismo existe el reconocimiento voluntario y expreso que exige la ley."

La ley aplicable al caso es la sección 2 de la Ley Núm. 229 de 12 de mayo de 1942 que dispone: "Los hijos nacidos fuera de matrimonio con anterioridad a la fecha de vigencia de esta Ley y que no tenían la condición de hijos naturales según la legislación anterior, podrán ser reconocidos por acción voluntaria de sus padres, y en defecto de éstos, por la de las personas con derecho a su herencia, a todos los efectos legales. Estos hijos quedarán legitimados por el subsiguiente matrimonio de sus padres entre sí."

Es después de aprobada la Ley Núm. 229 que el causante de la Sucesión demandada, quien siempre había tenido a sus hijos como tales y los alimentaba, según concluye la propia Sala sentenciadora, radica tres planillas de declaración de ingresos correspondientes a los años 1943, 1944 y 1945, haciendo constar que los demandantes recurrentes en este caso eran hijos suyos y solicitando el crédito correspondiente por dichos hijos. No hay duda que se trata de un documento público y la ilustrada Sala sentenciadora así lo reconoce. Además, sabido es que la disposición en la cual consta la definición de documento público y solemne, que se sobreentiende aplicable a estos casos de reconocimiento, es el art. 596 de la Ley de Enjuiciamiento Civil española que comprende entre los documentos públicos . . . "los demás documentos que se hallen en los archivos públicos o dependientes del Estado, de las provincias o de los pueblos, y las copias sacadas y autorizadas por los Secretarios y archiveros por mandato de la autoridad competente". Véase art. 49 Ley de Evidencia nuestra—411 del Código de Enjuiciamiento Civil de Puerto Rico (1933).

El error que cometió la ilustrada Sala sentenciadora fue aplicar al documento público y solemne, que es el que determina el reconocimiento voluntario, las reglas aplicables al documento privado (escrito indubitado) que es el que determina el reconocimiento forzoso o involuntario y exige la voluntad expresa, deliberada de reconocer. Al referirse a los arts. 135 y 131 del Código Civil español (art. 125 nues-

tro) Manresa establece claramente la distinción entre ambos medios de prueba: "El escrito en que el padre reconozca su paternidad ha de ser un documento privado, porque si el reconocimiento constase en un documento público caería de lleno en la esfera voluntaria del art. 131 y no habría necesidad de obligar al padre a un acto que ya había realizado por su voluntad": 1 Manresa: Comentarios al Código Civil Español 750 (Séptima edición Reus del 1956). Lo único que tenemos que resolver, por nuestra autoridad del Tribunal de última instancia, es que una planilla de declaración de contribución de ingresos constituye un documento público, a los efectos de un reconocimiento voluntario, de acuerdo con la Ley Núm. 229 de 12 de mayo de 1942.

En cuanto al carácter de expreso del documento público, la norma sentada por la ilustrada Sala sentenciadora es todavía más rigurosa que la que exige la jurisprudencia española para el escrito indubitado de acuerdo con el art. 125, puesto que además de la declaración expresa en el documento privado, se permite la incidental—*incidencia*—siendo suficiente que aparezca la intención de hacerlo, aunque el propósito del documento fuera otro. Tal criterio lo hemos encontrado admirablemente expuesto en la parte dispositiva de la Sentencia de 22 de enero de 1948 del Tribunal Supremo de España que dice así: "Considerando que si bien la Base quinta de la Ley de 11 de mayo de 1888—invocada por el recurrente en apoyo de su tesis—declara que 'no se permitirá la investigación de la paternidad sino en los casos de delito o cuando exista escrito del padre en el que conste la voluntad indubitada de reconocer por suyo al hijo, deliberadamente expresada con ese fin o cuando medie posesión de estado', es lo cierto que entre esta redacción y la del artículo 135 del Código Civil se observa una marcada diferencia bajo dos distintos aspectos: es el primero que la Base quinta emplea el término genérico 'hijo', mientras que el artículo 135 se refiere de manera específica al 'hijo natural' y consiste el segundo aspecto—que es el de interés ahora a efectos de de-

cidir la cuestión planteada—en que la Base quinta aplica las palabras 'deliberadamente expresada con ese fin' refiriéndose a la voluntad indubitada de reconocer, en tanto que lo exigido con carácter de indubitado por el artículo 135 es el escrito en que el padre reconozca su paternidad, no el propósito que haya inspirado tal declaración.

"Considerando que la últimamente apuntada diferencia entre uno y otro texto legales—a la que ya aludió esta Sala en sus sentencias de 3 de julio de 1941, 8 de febrero de 1943 y 10 de febrero de 1947—destruye la base en que se apoyan los tres motivos del recurso, pues al no exigirse por el repetido artículo 135 del Código Civil como condición del reconocimiento del hijo natural que se acredite la deliberada voluntad del padre en tal sentido y requerir tan sólo que tenga carácter de indubitado el escrito en que se exprese la declaración, sin referirse al propósito que la hubiere inspirado, resulta manifiesto que admitida por el recurrente la autenticidad de los documentos en que él califica de hija suya a la menor de que se trata y se declara padre de la misma —lo cual lo hace en las cartas a 21 y 26 de junio y 26 de setiembre de 1934—no cabe entender que existen en la sentencia las infracciones legales acusadas en los motivos primero y tercero ni tampoco el error de hecho denunciado en el segundo, ello aun prescindiendo de que, según aparece de la carta de 30 de abril del citado año, al enterarse de que la hoy recurrida se hallaba encinta, procuró el recurrente anticipar la fecha del matrimonio, que se celebró las pocas semanas después de haber dado a luz aquélla; y a la indicada conclusión no obsta el texto de la antes referida Base quinta porque, como también estableció esta Sala en sus antiguas sentencias de 24 de junio de 1897 y 10 de noviembre de 1902, promulgada la Ley de Bases de 11 de mayo de 1888 no para ser aplicada por los Tribunales sino para que el Gobierno se amoldara a ella al hacer uso de la autorización conferida por el Poder legislativo, no pueden los preceptos de

dicha Ley servir de fundamento a ningún recurso judicial ordinario o extraordinario."

La parte recurrida se basa en el caso de *Álvarez* v. *Álvarez*, 77 D.P.R. 909 (Sifre) (1955), cita precisa a las págs. 912–913. Si se examina ese caso se verá que trata de una admisión verbal en un procedimiento de reconocimiento forzoso o involuntario, a los efectos de obviar la presentación de prueba. Este caso está mejor regido por la doctrina, en cuanto a reconocimiento voluntario, establecida en *Velázquez* v. *Velázquez*, 82 D.P.R. 619 (Blanco Lugo) (1961), cita precisa a las págs. 626–627.

*Debe revocarse la sentencia dictada.*